IN THE IOWA DISTRICT COURT IN AND FOR SCOTT COUNTY

| | |
|---|---|
| ST. MALACHY ROMAN CATHOLIC CONGREGATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MARIE R. TARBOX, GOSMA, TARBOX & ASSOCIATES, P.L.C., JAMES INGRAM, ROBERT W. BAIRD & CO., INCORPORATED, AMERICAN RED CROSS, AMERICAN RED CROSS OF THE QUAD CITIES AREA, and KEWANEE UNITED WAY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 117660 <br><br> DEFENDANT ROBERT W. BAIRD & CO., INCORPORATED'S BRIEF IN SUPPORT OF MOTION TO DISMISS |

## Table of Contents

I. INTRODUCTION AND FACTUAL BACKGROUND. .................................................. 2

II. THE CLAIMS AGAINST BAIRD SHOULD BE DISMISSED. ..................................... 3

   A. Legal Standards. ............................................................................................................ 3
   B. Plaintiffs' Claims are Barred by the Economic Loss Doctrine. ..................................... 4
   C. As a Securities Broker to Mr. Engels, Baird Owed no Duty to Beneficiaries of Mr. Engels' Will or Charitable Trust. ................................................................................... 4
      1. The Classes of Persons to Whom a Securities Broker Owes Legal Duties should not be Expanded. ........................................................................................................... 5
      2. No Case Law Supports the Expansion of the Duties of a Securities Broker Required by Plaintiffs' Claims. ................................................................................................ 8
   D. Neither Mr. Ingram nor Baird Owed a Duty to Plaintiffs to Encourage or Facilitate Transfer of More Assets from Mr. Engels' Revocable Trust to the Charitable Trust. ...... 10
   E. Baird Owed Plaintiffs no Duties Arising from Mr. Ingram's Role as Trustee of the Charitable Trust. .......................................................................................................... 11

III. CONCLUSION. ............................................................................................................ 12

Defendant, Robert W. Baird & Co., Incorporated ("Baird"), by its undersigned attorneys, submits this Brief in Support of its Motion to Dismiss.

I.  INTRODUCTION AND FACTUAL BACKGROUND.

Plaintiffs' hopes concerning the Estate of Alvin F. Engels apparently have been disappointed. Their disappointed hopes, however, do not provide a basis for recovery of damages from Baird, the broker-dealer firm that carried certain accounts for Mr. Engels and for his revocable trust during Mr. Engels' lifetime. As set forth in detail below, the absence of any legal duty (or legal relationship whatsoever) between the Plaintiffs and Baird make it impossible for Plaintiffs to succeed based on the facts they have alleged.

Plaintiffs' relevant factual allegations, taken as true for the purposes of Baird's Motion to Dismiss, are as follows:

- On September 24, 1999, Mr. Engels created a Revocable Trust Agreement (the "Revocable Trust"), in which he appointed himself and Loretta Wongstrom as Co-Trustees. (Petition, ¶ 11).

- Mr. James Ingram ("Ingram"), an employee/agent of Baird, handled the transfer of assets to Mr. Engels' revocable trust. (Petition, ¶ 7; ¶ 32).

- Four years later, On October 1, 2003, Mr. Engels signed a Last Will and Testament (the "Will") and a Charitable Trust Agreement (the "Charitable Trust"). (Petition, ¶ 15). Baird employees witnessed the signing of the Will. (Id.)

- Baird's employee, Jay Ingram, signed the Charitable Trust, as Trustee. (Petition, ¶ 7; Petition, ¶ 15; Petition, Exhibit B).

- Mr. Ingram's signature was notarized by a Baird employee, Mardee Trapkus. (Petition, ¶ 15; Petition, Exhibit B).

- Mr. Ingram was named a co-trustee of Mr. Engels' Charitable Trust. (Petition, ¶ 34).

- Mr. Ingram participated in the execution of the Will. (Petition, ¶ 35).

As set forth in detail below, the foregoing facts, no matter how favorably construed for the benefit of the Plaintiffs, simply cannot serve as the basis for a recovery by Plaintiffs from Baird.

## II.     THE CLAIMS AGAINST BAIRD SHOULD BE DISMISSED.

### A.     Legal Standards.

A motion to dismiss is properly granted when a plaintiff's petition on its face shows no right of recovery under any state of facts. Rees v. City of Shenandoah, 682 N.W.2d 77, 79 (Iowa 2004) ("The petition need not allege ultimate facts that support each element of the cause of action. The petition, however must contain factual allegations that give the defendant 'fair notice' of the claim asserted so the defendant can adequately respond to the petition."). Iowa courts will grant a motion to dismiss for failure to state a claim when a plaintiff fails to show the existence of a legal duty or right by which it can recover. See Unertl v. Benzanson, 414 N.W.2d 321, 324 (Iowa 1987). When considering a motion to dismiss, the court must admit as true all well-pleaded allegations of the petition, and must construe the facts in the light most favorable to the plaintiff. See Haupt v. Miller, 514 N.W.2d 905, 911 (Iowa 1994); Cutler v. Klass, Whicher and Mishne, 473 N.W.2d 178, 181 (Iowa 1991). "While a motion to dismiss admits the truth of all well-pleaded, issuable and relevant facts, it does not admit mere conclusions of fact or law not supported by allegations of ultimate facts." Krise v. Cota, 2000 WL 1825447, *1 (Iowa Ct. App., Dec. 13, 2000), citing Tate v. Derifield, 510 N.W.2d 885, 887 (Iowa 1994).

**B.     Plaintiffs' Claims are Barred by the Economic Loss Doctrine.**

Pursuant to the "economic loss doctrine," it is generally the case that a plaintiff "cannot maintain a claim for purely economic damages arising out of [a] defendant's alleged negligence." Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp., 345 N.W.2d 124, 128 (Iowa 1984). See also Determan v. Johnson, 613 N.W.2d 259, 263 (Iowa 2000) (Plaintiff's "remedy lies in contract law, not tort law"). Here, Plaintiffs seek only economic losses from Baird -- they do not seek damages for bodily injury or wrongful death. Likewise, their claims are based solely on allegations of negligence; they do not allege any intentional wrongdoing by Baird. Under applicable law it is therefore clear and absolute that they cannot pursue such a claim against Baird based on a negligence theory. Thus, Plaintiffs' claim against Baird must be dismissed.

**C.     As a Securities Broker to Mr. Engels, Baird Owed no Duty to Beneficiaries of Mr. Engels' Will or Charitable Trust.**

Plaintiffs are the beneficiaries of Mr. Engels' Will and his Charitable Trust. They do not (and could not) allege that they are themselves clients of Mr. Ingram.[1] As such, Mr. Ingram owed them no duty of care.

An actionable claim of negligence requires "the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages." Thompson, 774 N.W.2d at 834. A legal duty "is defined by the relationship between individuals; it is a legal obligation imposed upon one individual for the benefit of another person or particularized class of persons." Stotts v. Eveleth, 688 N.W.2d 803, 807 (Iowa 2004). Whether a duty arises out of a given relationship is a matter of law for the court's

---

[1]     St. Malachy, as the beneficiary of the Charitable Trust, which was a beneficiary of the Will, is two steps removed from any client relationship between Mr. Engels and Mr. Ingram, and therefore also lacks standing to bring these claims, even if the other Plaintiffs, as beneficiaries of the Will, might have standing to proceed.

{01032648.DOC}                                    4

determination. Thompson v. Kaczinski, 774 N.W.2d 829, 834 (Iowa 2009), citing Shaw v. Soo Line R.R., 463 N.W.2d 51, 53 (Iowa 1990); see also Sweeney v. City of Bettendorf, 762 N.W.2d 873, 880 (Iowa 2009) ("[t]he question of the proper scope of [a] legal duty is a question of law to be determined by the court."); Overturff v. Raddatz Funeral Servs., Inc., 757 N.W.2d 241, 245 (Iowa 2008) ("the existence of a duty under a given set of facts is a question of law for the court").

As set forth in detail below, because Mr. Ingram owed his duties to his client, and not to Plaintiffs, they cannot prevail on their negligence claims against Baird.

### 1. The Classes of Persons to Whom a Securities Broker Owes Legal Duties should not be Expanded.

Three factors should be considered in determining whether a duty to exercise reasonable care exists: (1) the relationship between the parties, (2) reasonable foreseeability of harm to the person who is injured, and (3) public policy considerations. Id. These factors have not been viewed as three distinct and necessary elements, but rather as considerations employed in a balancing process. Id., citing Stotts, 688 N.W.2d at 810.

Applied to these circumstances, this three factor test militates strongly against the creation of a new duty of care running from a securities broker to the potential beneficiaries of the trusts and estates of the clients of the securities broker.

- **Relationship of the Parties**

With respect to the first factor, the relationship between the parties, there is none; Plaintiffs do not and cannot allege that they were clients of Mr. Ingram, in privity with him. While privity is not always required to establish duty, the privity standard has been relaxed only "in severely limited situations." JAH ex rel. RMH v. Wadle & Associates, 589 NW 2d 256, 260 (Iowa 1999) (therapists' duty runs to patient alone, not to family members); see also Ryan v.

Kanne, 170 N.W.2d 395, 402 (Iowa 1969) (relaxing privity requirement for known prospective users of accounting report, but noting that "the courts have been reluctant to fully relax the privity requirement in [the area of third party financial losses], but have sought to impose liability only where the plaintiff owed a duty of care to a particular known reliant party rather than to a potentially larger unascertained class."); Frederick v. Smith, 7 A.3d 780 (N.J. Super. 2010) ("a bank or brokerage firm does not typically owe a duty to non-customers."); Vandenbossche v. First Nat. Bank of Rochester, 735 F. Supp. 405 (M.D. Fla. 1990) (trust beneficiaries' claims against brokerage firm dismissed based on finding that "Plaintiff did not have a contractual or customer relationship with the broker defendants."). Here, Mr. Ingram acted as the securities broker for Mr. Engels. In that capacity, Mr. Ingram owed his duties solely, directly and strictly to Mr. Engels – not to the potential beneficiaries of Mr. Engels' estate or trust.

- **Reasonable Forseeability**

With respect to "reasonable forseeability of harm" it would not be reasonable for a securities broker to foresee injuries, separate and distinct from injuries suffered by his or her client, to the heirs or beneficiaries of his or her client. The broker should certainly be, and is, expected to foresee injuries to the overall value of an account arising from the broker's conduct, errors and omissions. In each of these cases, however, the broker's duty runs to the client, and the existence of that duty provides adequate recourse to the client (or, in the event of the death of the client, the client's estate, standing in the client's shoes) to obtain damages from the broker for wrongdoing. However, because the executor of the client's estate and the trustee of a client's trust can always bring claims for mishandling of an account, even if the client dies, no expansion

of the duty of the securities broker is required to provide redress against these reasonably foreseeable injuries.

- **Public Policy Considerations**

And finally, two public policy considerations favor rejecting Plaintiff's invitation to expand the range of persons to whom a securities broker owes a duty. Initially, creation of a duty to beneficiaries of a client's estate or trusts would place a securities broker in a difficult position of attempting to reconcile the interests of the securities broker's current client with the interests of those who would benefit from the assets of the clients upon the client's death. See e.g. JAH ex rel. RMH, 589 N.W. 2d at 262 ("This result would, we believe, place therapists in a difficult position, requiring them to answer to competing demands and to divide their loyalty between sharply different interests."); citing Doe v. McKay, 1700 N.E.2d 1018, 1023-1024 (1998). Were a broker, acting in such a role, be required as a matter of law to consider not only the interests of the broker's client, but also the interests of those persons who might benefit from actions of the broker, the broker would be forced into an unfair position. Instead of focusing solely on the objectives and desires of the broker's client, the broker would be required to constantly look over his or his shoulder, and wonder whether advice to a client might be used against him or her by the client's heirs who had hoped for greater bequests. Just as an example – a client may desire to pursue a riskier investment strategy that offers the chance of greater returns. This strategy may ultimately lead to losses. While the strategy may have been one that the client intentionally and properly pursued, an estate beneficiary might still complain that the broker, owing a duty also to him, should have prevented the riskier investments, and encouraged the client to invest in safe, secure alternatives, offering lower returns, to preserve the client's assets for the beneficiary.

Further, if disappointed beneficiaries were permitted to maintain claims against the securities brokers of their settlers or testators, there is potential for significant growth in speculative litigation by beneficiaries (or in the case of St. Malachy, a beneficiary of a beneficiary) hoping to improve their positions. Given the vagaries of the securities markets, the remoteness of the beneficiaries from the discussions between the client and the securities broker that shed light on the actions and investment decisions of a client while alive, and the potential for every case of disappointed hopes to be turned into a lawsuit, the Court should reject the invitation of Plaintiffs to permit any disgruntled beneficiary to file a lawsuit against a securities broker who advised the deceased.

### 2. No Case Law Supports the Expansion of the Duties of a Securities Broker Required by Plaintiffs' Claims.

Baird could locate no case law on all fours with this matter. However, an Iowa case dealing with the scope of the duty of a testator's attorney to potential beneficiaries of the testator provides support for rejecting any new duty owed by a securities broker of a testator to potential beneficiaries of the testator. In Schreiner v. Scoville, 410 N.W.2d 679 (Iowa 1987), the plaintiffs sued an attorney who drafted a will that was ineffective to pass property to them, as beneficiaries. Id. at 681. In Schreiner, the Iowa Supreme Court recognized that in general, a claim for legal malpractice required privity between the plaintiff and the attorney being sued. Id. ("Generally, absent special circumstances such as fraud or collusion, an attorney is liable for professional malpractice only to a client."). The court noted one policy reason for this rule: "[I]mposing a duty to the general public upon lawyers would expose lawyers to a virtually unlimited potential for liability." Id. Notwithstanding, however, the court carved out a narrow exception to the privity requirement, finding that when a lawyer drafts estate planning

documents, the "lawyer owes a duty of care to direct, intended and specifically identifiable beneficiaries of a testator as express in the testator's testamentary instruments." Id.

No such exception to the general concept of privity has ever been established to impose liability on a securities broker to a trust or will beneficiaries of the client of the securities broker. While the Iowa Supreme Court, in Schreiner, found a basis to expand the concept of duty in the context of an attorney advising an estate planning client, it has never similarly extended the concept of duty as it pertains to the securities brokers. Moreover, while the court in Schreiner identified several policy reasons -- based on the unique position and responsibilities of an attorney in the preparation of estate planning documents -- supporting a narrow exception to the general rule, no such bases exist to support imposing broadened duties in the context of the securities broker-client relationship. Simply put, the securities broker does not draft estate planning documents and except as the testator specifically directs, has no legal role in implementing them.

The Court should reject the invitation to expand the range of parties to whom a securities broker owes duties of care to include beneficiaries of wills and trusts of the brokers' actual clients. Such a finding would place securities brokers in sometimes confounding circumstances, in which they are caught between trying to provide sound advice to their living clients in light of the expressed desires of those clients, while also trying to protect against claims by potential future beneficiaries of their still-living clients. Such duties could easily come into conflict, once the door is opened. The more predictable and rational approach is to continue to extend the duties of care of a securities broker solely to the broker's client. The broker should be obligated solely to his or her client – not to future beneficiaries. Accordingly, Plaintiffs'

claims against Baird, which depend on a significant extension of a securities broker's duties, should be dismissed.

> D. **Neither Mr. Ingram nor Baird Owed a Duty to Plaintiffs to Encourage or Facilitate Transfer of More Assets from Mr. Engels' Revocable Trust to the Charitable Trust.**

Plaintiffs allege that Mr. Ingram (and Baird as a result) were negligent because Mr. Ingram failed to alert Mr. Engels or Mr. Engels' estate planning attorney to the fact that Mr. Engels' investment assets were actually held in the Revocable Trust. Petition, ¶ 36. Mr. Ingram, as trustee of the Charitable Trust, had no duty to take such steps.[2]

The Will and Charitable Trust were executed under Illinois law. Petition, Exhibits B, C. To have testamentary capacity under Illinois law (the law governing Mr. Engels' Will and the Charitable Trust), the testator must possess sufficient mental capacity to know the natural objects of his bounty, comprehend the kind and character of his property, understand the nature and effect of his act, and make disposition of his property according to some plan formed in his mind. Matter of Basich's Estate, 398 N.E.2d 1182, 1185 (Ill. App. 1979). Thus, to the extent he was competent to make a Will, Mr. Ingram was entitled to assume that Mr. Engels knew how he held title to his assets. Mr. Ingram had no legal obligation to remind Mr. Engels of those facts. Absent such a duty, Plaintiffs cannot recover from Baird.

---

[2] For the purposes of its Motion to Dismiss, Baird acknowledges that the Court must assume that Mr. Ingram did not, in fact, alert Mr. Engels to the fact that his investment property was held by his Revocable Trust. In reality, however, Baird believes Mr. Ingram did alert Mr. Engels to the fact that his investment assets were titled to the Revocable Trust, and would not pass under his Will.

### E. Baird Owed Plaintiffs no Duties Arising from Mr. Ingram's Role as Trustee of the Charitable Trust.

The Petition does not allege that Baird served as Trustee for the Charitable Trust. Rather, it alleges only that Mr. Ingram was the Trustee of the Charitable Trust. Petition, ¶ 34. Moreover, the Charitable Trust quite clearly names Mr. Ingram – with no mention of Baird – as trustee of the Charitable Trust. Petition, Exhibit C. When Mr. Ingram signed the Charitable Trust, Mr. Ingram in no way indicated by his signature that he was acting as an agent of Baird.[3] Petition, Exhibit C, p. 7. By law, then, Baird was not the trustee of the Charitable Trust, and Mr. Ingram was not acting as its agent when he agreed to serve in such capacity. When Mr. Ingram acted as trustee of the Charitable Trust, he was acting solely in his personal capacity.[4]

In light of the foregoing, even to the extent that a claim could be stated against Mr. Ingram arising from his role as trustee of the Charitable Trust (setting aside, for now, the lack of merit in such a claim), Baird, as a matter of law, would have no liability for the service of Mr. Ingram as trustee of the Charitable Trust. Thus, even if the Court were to reject all of the arguments set forth above and conclude that it might be possible to permit a claim to proceed further in this action, to examine whether Mr. Ingram fulfilled his trustee duties, the claim

---

[3] The Charitable Trust provides that it will be governed by Illinois law. Petition, Exhibit C, Article 6. Baird could not have served in such a capacity for the Charitable Trust under Illinois or Iowa law unless it had trust powers. See 760 ILCS 5/1(2)(2) (identifying the limited circumstances in which a corporation may qualify to serve as a Trustee); Iowa Code § 633.64. The Petition makes no allegation that Baird has trust powers under Iowa or Illinois law.

[4] Nor can Baird be vicariously liable for the acts of its agent, acting outside the scope of his employment with Baird. Riniker v. Locust St. Sec., Inc., 720 N.W.2d 191 (Iowa Ct. App. 2006) (securities brokerage firm owes no duty to customers of a registered representative regarding business activities that are outside the scope of the registered representative's agency); citing Asplund v. Selected Inv. In Fin. Equities, 103 Ca.App. 4th 26, 42 (2001) (concluding a securities broker-dealer is not vicariously liable for actions taken by its registered representatives which are outside the representative's scope of employment). But see McGraw v. Wachovia Sec., L.L.C., C 08-2064-MWB, 2010 WL 5209231 (N.D. Iowa Dec. 22, 2010).

against Baird should still be dismissed. To the extent Plaintiffs' claims are founded solely on Mr. Ingram's role as trustee, those claims cannot reach Baird.

### III. CONCLUSION

Speculating that Alvin Engels' assets and those of his revocable trust were not in fact distributed exactly as Mr. Engels intended, Plaintiffs have filed legally unsupportable claims against Baird. Baird owed no duty to Plaintiffs, and certainly no duty to assure that Mr. Engels gave more to the Charitable Trust than he actually did. Plaintiffs' claims should be dismissed as a matter of law

WHEREFORE, Defendant Robert W. Baird & Co., Incorporated, respectfully requests entry of an order dismissing the claims of Plaintiffs, for failure to state a cause of action upon which relief can be granted, and for such other relief as the Court deems just and appropriate.

_____
WILLIAM T. MCCARTAN (#AT0005156)
of
BRADLEY & RILEY PC
2007 First Avenue SE
P.O. Box 2804
Cedar Rapids, IA 52406-2804
Phone: (319) 363-0101
Direct Dial: (319) 861-8737
Fax:    (319) 363-9824
Email: bmccartan@bradleyriley.com
ATTORNEYS FOR THE DEFENDANTS

Copy to:

Peter C. Riley
Tom Riley Law Firm, P.L.C.
4040 First Avenue NE
P.O. Box 998
Cedar Rapids, IA 52406-0998

Kevin J. Visser
Jason M. Steffens
Simmons Perrine Moyer Bergman PLC
115 3rd Street SE, Suite 1200
Cedar Rapids, IA 52401

PROOF OF SERVICE
I certify that a true copy of this document was served upon each of the attorneys of record of all parties to this action at the addresses disclosed by the pleadings on March 23, 2011
By: ☒ U.S. Mail   ☐ Hand Delivered
    ☐ Facsimile   ☐ Other
Signature Deborah M. Feuly